IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DANIEL MEISTER,                 §
                                §
         Plaintiff,             §
                                §
vs.                             §   CIVIL ACTION NO. _14-4046_
                                §
ELECTRIC MOTOR SUPPLY CO.       §
                                §
         Defendant.             §

## PLAINTIFF'S ORIGINAL COMPLAINT

Daniel Meister, plaintiff, and hereinafter referred to as such, hereby complains of Electric Motor Supply Co. (hereinafter "EMSCO" or "defendant"), as follows:

### I.

### PARTIES, JURISDICTION AND VENUE

1.   Daniel Meister is a citizen of Texas who resides in Bowie County, Texas.

2.   Electric Motor Supply Company is a foreign corporation incorporated under the laws of the State of Minnesota, where it also maintains its principal place of business.  EMSCO may be served with process by and through its president and chief executive officer, Mr. Timothy Bullock, 4650 Main Street, Fridley, Minnesota  55421.

3.   The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because the plaintiff and the defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.    Venue is proper in this district under U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to plaintiff's claim occurred here.

## II.

### FACTUAL BACKGROUND

5.    On or about June 30, 2011, plaintiff was on the premises of Engineered Products Industries, LLC ("EPI") in the outskirts of Nashville, Arkansas.   At the time of the incident made the basis of this claim, plaintiff was installing upon the premises of EPI's plant facility a certain electrical device, a so-called "disconnect".    The disconnect in question is hereinafter referred to as "the product".   The installation was in furtherance of EPI's outfitting its industrial facility with various heavy machines which require, for operation, high-voltage electricity.   The product was sold by EMSCO to EPI, who in turn supplied it to plaintiff for installation at the EPI facility.

6.    The product is fitted with a lever on its exterior which can be moved to "on" and "off" positions, respectively. At all times relevant, including during plaintiff's installation of the product, such lever was in the "off" position.    However, at the time of the installation, unbeknownst to plaintiff, the product was missing a critical internal insulating component, which, had it been present as designed and specified, would have prevented the incident in question and plaintiff's injuries.

7.    At the time of the incident in question, plaintiff was in the process of connecting the electrical supply, which flows inside the plant from its point of origin through a conduit or "buss", to a terminal fitting internal to the product. Suddenly, and without warning, an arc of electrical fire shot from inside the product, severely burning plaintiff on his head and upper body, including his face, neck, chest, arm, and hand.

8.    Plaintiff's injuries were so severe that he was transported by helicopter to the closest hospital capable of treating burn victims.    To this day, plaintiff continues to suffer, and, for the rest of his life, will suffer, from the injuries sustained in the incident.

### III.

### CAUSES OF ACTION AGAINST EMSCO

### A. STRICT LIABILITY

9.    At the time of plaintiff's injury, EMSCO was, and is now, engaged in the business of remanufacturing, assembling, and distributing into the stream of commerce electrical disconnect boxes, including the product.    As relevant here, EMSCO sold the product to EPI, who in turn supplied it to plaintiff, specifically for use in outfitting EPI's plant.

10.    At the time plaintiff was injured, the product was in the same condition as it was when it was remanufactured, assembled, and sold by EMSCO to EPI.

11.   Plaintiff was injured by using the product in the manner foreseen by EMSCO.

12.   The product was defective, and unsafe for its intended purposes, both at the time it left the control of EMSCO and at the time it was installed by plaintiff, in that it was not fitted, as designed and specified by the original manufacturer, with a simple insulating component in its interior.   Indeed, had the insulator been in place as designed and specified, such device would have prevented the electrical fire which burned plaintiff.

13.   Furthermore, the product was defective and unreasonably dangerous, because there was no warning to plaintiff that the insulating component was missing.

14.   The foregoing defects, for which EMSCO is strictly liable and otherwise legally responsible, were a producing cause of plaintiff's injuries and damages.

### B. BREACH OF WARRANTY

15.   EMSCO impliedly warranted to the public generally, and plaintiff in particular, that the product was of merchantable quality, and was safe and fit for the purposes intended when used under ordinary circumstances and in an ordinary manner. EMSCO is a merchant with respect to the product, which was not merchantable as warranted.   EMSCO knew, or had reason to know, of the purposes for which the product would be used, and that

the plaintiff was relying on EMSCO'S skill and judgment to furnish a complete disconnect which would function safely. Nevertheless, without the interior insulating component, the product was not merchantable, was unfit for the purpose for which it was intended to be used, and was extremely dangerous.

16. Plaintiff's injuries and damages were a proximate result of EMSCO's breach of warranty.

### C. NEGLIGENCE

17. EMSCO was negligent in the remanufacture, assembly, and marketing of the disconnect in that it failed to fit the product with an insulating device as designed and specified to prevent the incident in question. Likewise, EMSCO was negligent in that it failed to warn plaintiff of the absence of the insulating component. EMSCO's negligence was a proximate cause of the plaintiff's injuries and damages.

### IV.

### CONDITIONS PRECEDENT

18. All conditions precedent to plaintiff's claims for relief have been performed or have occurred.

### V.

### DAMAGES

19. As a result of EMSCO's strict product liability and breaches of warranty, and negligence, plaintiff suffered serious, disfiguring bodily injuries, which in turn have caused

him much pain and suffering and mental anguish. Moreover, plaintiff required substantial treatment and has incurred medical expenses for such injuries, and, in reasonable medical probability, he will incur medical expenses in the future. Further, plaintiff has lost wages in the past, and will suffer a loss of earning capacity in the future. Further still, plaintiff has suffered permanent physical impairment and disfigurement. Accordingly, plaintiff hereby sues EMSCO for all injuries and damages suffered.

WHEREFORE, PREMISES CONSIDERED, plaintiff prays that, upon final hearing, plaintiff have judgment of and from EMSCO in an amount of his damages as alleged and as proven; that he be awarded prejudgment interest as allowed by law; that such judgment bear interest as allowed by law; that he recover all costs of suit; and that he have such other and further relief, both at law and equity, to which he is justly entitled and will ever pray.

Respectfully submitted,

KELLY AKINS
State Bar No. 00962450

Kelly Akins, P.C.
3520 Fairmount Street
Dallas, Texas 75219
e-mail:  kelly@kellyakinspc.com
214/522-1188
214/522-1186 (FAX)

ATTORNEY FOR PLAINTIFF,
DANIEL MEISTER